UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**GEORGE E. McGOVERN, III**            **CIVIL ACTION. NO. 5:13-CV-1353**
**AS THE CURATOR OF DAVID**
**RICHARD MOORE**

**VERSUS**            **JUDGE STAGG**

**DAVID TODD MOORE**            **MAGISTRATE JUDGE HAYES**

### MEMORANDUM RULING

Before the Court is Plaintiff's "Motion to Strike or in the Alternative, Motion for Continuance and Leave to Conduct Additional Discovery and Respond to Evidence Presented for the First Time Via Reply Brief." [doc. # 15]. For the reasons stated below, the Motion to Strike is **DENIED**, and the Alternative Motion for Continuance and Leave to Conduct Additional Discovery is **GRANTED**.[1]

### Background

Plaintiff, in his capacity as Curator for David Moore ("David"), filed a Petition to rescind a warranty deed executed by David in 2010, arguing: (1) the deed is invalid because David lacked capacity to sell or donate the land; (2) Defendant obtained the land by fraud, undue influence, and ingratitude; and (3) the deed should be rescinded for lesion beyond moiety as the sale price was less than one half of the fair market value of the land. [doc. # 1-1]. The deed transferred an Iowa farm to David's son, Todd Moore ("Defendant"). [doc. # 11-7]. Defendant

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this Court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

is a citizen and resident of the state of Iowa.  [doc. # 11-1, p. 7].  Since 1963, Defendant has resided without interruption in Iowa.  *Id.* at 9.  David, in contrast, is a resident of Bossier City, Louisiana.  [doc. # 3-1, p. 1].

Around 2004 or 2005, David contracted early-onset dementia or Alzheimer's disease. [doc. # 1-1, p. 4].  Since at least the spring of 2008, Defendant was aware that David suffered from Alzheimer's disease.  [doc. # 11-1, p. 16].   Around 2009, to effectuate the transfer of the Iowa farm, David contacted Pugh, a Louisiana attorney, who consulted Anderson, an Iowa attorney.  [doc. # 17-1, p. 16].  Pugh and Anderson exchanged letters (the "Letters") in 2009 and 2010 in which they discussed how best to transfer title of the farm to Todd.  *Id.* at 16-22.

Ultimately, title of the farm was transferred to Defendant by warranty deed on December 21, 2010.  [doc. # 11-7, p. 2].  In July 2011, members of David's family instituted interdiction proceedings against David, and Plaintiff was appointed David's curator.  *In re Interdiction of David Richard Moore*, No. 136,565, 26th Judicial District Court, Bossier Parish, Louisiana.  The Petition of Intervention was filed because, according to Petitioners, David was "unable to make reasoned decisions regarding the care of his person and his property."  [doc. # 11-2, p. 4]. Defendant intervened in the interdiction proceeding about nine months after it was filed.  [doc. # 11-4].

After the instant Petition was filed, Defendant filed a motion to dismiss, asserting that this Court lacks personal jurisdiction over him.  [doc. # 3].  In his reply to Plaintiff's opposition to that motion, Defendant attached the affidavit of Attorney Anderson.  [doc. # 17-1].  Plaintiff contends that because the information in the affidavit was privileged, and because Anderson breached David's attorney-client privilege by disclosing the information, the Court must strike it

2

from the record. [doc. # 15-1, p. 1]. The affidavit recounts numerous conversations that Anderson had with David and David's attorney indicating that David wanted Defendant to have the land in question. [doc. # 17-1]. Anderson also states that, in his telephone conversations with David, he observed David acting and conversing rationally and coherently when informing Anderson of his decision to give David the land. *Id.* at 2. In response to Plaintiff's privilege claim, Defendant argues that David waived the privilege because David disclosed the privileged information before Anderson did. [doc. # 20, p. 5].

Plaintiff also contends that the affidavit should be struck because it is evidence submitted for the first time via reply brief. [doc. # 15-1, p. 1]. Alternatively, Plaintiff requests that he be entitled to obtain relevant documents from Anderson and to depose Anderson so that the affidavit can be properly rebutted. *Id.* Counsel for Defendant has no objection to the Court granting Plaintiff's alternative request.

The matter is now before the Court.

## Analysis

I. Attorney-Client Privilege

Plaintiff first moves to strike the affidavit of Anderson because the communications contained therein are allegedly protected by the attorney-client privilege. A court can strike such an affidavit by using its "inherent power to control the disposition of the cases on its docket." *Anderson v. Georgia Gulf Lake Charles, LLC.*, 2008 WL 919716, at *1 (W.D. La. 2008); *U.S. v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (internal quotation omitted).[2]

---

[2] A motion to strike filed pursuant to Rule 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Although affidavits are not pleadings, courts have permitted

For the reasons stated below, the request is denied.  At the outset, the Court notes that the communications in the affidavit likely do not present a question of attorney-client privilege at all; rather, the communications probably fall within the scope of a lawyer's duty of confidentiality.

Louisiana Rule of Professional Conduct 1.6 codifies a lawyer's duty of confidentiality and states, "[a] lawyer shall not reveal information relating to the representation of a client . . . ." La. R.P.C. 1.6.  The attorney-client privilege and a lawyer's duty of confidentiality are two distinct–albeit similar–concepts.  Professor Gregory Smith explained the difference:

> The duty of confidentiality is a duty not to disclose information about clients or their matters. It requires the lawyer to keep his or her lip buttoned. This duty is found in the Rules of Professional Conduct and is a matter of "ethics." La. R.P.C. 1.6.  In contrast, the attorney-client privilege arises under the law of evidence and is set forth in the Code of Evidence.  See La. Code Ev. art. 506.  The privilege provides an evidentiary shield against compelled disclosure of confidential client communications. Its fundamental purpose is to prevent such communications from coming into evidence or from being discovered.

Gregory Smith, *Confidentiality and the Attorney-Client Privilege: A Few Fundamentals*, 47 LABJ 326 (1999).  Further, as the Comment to the identical Model Rule 1.6 states:

> The attorney-client privilege . . . appl[ies] in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.

MODEL RULES of PROF'L CONDUCT R. 1.6 cmt. 3 (2011).

---

affidavits to be challenged by motions to strike because the Federal Rules provide no other means to contest their sufficiency.  *McLaughlin v. Copeland*, 435 F. Supp. 513, 519 (D. Md. 1977) (citing *Sunshine Kitchens, Inc. v. Alanthus Corp.*, 66 F.R.D. 15, 17 (S.D. Fla. 1975); *Monroe v. Bd. of Educ.*, 65 F.R.D. 641, 647 (D. Conn. 1975).  An objection–as opposed to a motion to strike–would also suffice to challenge an affidavit.  *See Smith v. Se. Stages, Inc.*, 479 F. Supp. 593, 594 (D.C. Ga. 1977).

Here, the communications in the affidavit likely fall within Rule 1.6 because the Court is not compelling Mr. Anderson to disclose confidential information. Mr. Anderson is not being required to produce evidence concerning Plaintiff; rather, Mr. Anderson has already revealed information relating to Plaintiff. In other words, if Mr. Anderson has breached any duty, he has failed to "keep his lip buttoned."

Taking this into consideration, even assuming that the affidavit was obtained in violation of Rule 1.6, striking the affidavit is not warranted. "When it comes to the admissibility of evidence in federal court, the federal interest in enforcement of federal law, including federal evidentiary rules, is paramount." *U.S. v. Scrushy*, 2004 WL 483264 at *5 (N.D. Ala. March 3, 2004). "[A] state rule of professional conduct cannot provide an adequate basis for a federal court to suppress evidence that is otherwise admissible." *U.S. v. Lowery*, 166 F.3d 1119, 1124 (11th Cir. 1999); *accord U.S. v. Keen*, 508 F.2d 986, 989 (9th Cir. 1974) ("[E]vidence obtained in violation of neither the Constitution nor federal law is admissible in federal courts, even though obtained in violation of state law." (citations omitted)).[3] Federal Rule of Evidence 402 provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.

---

[3] Plaintiff asserts that *U.S. v. Goldberg*, 450 F.2d 295, 296 (5th Cir. 1971), requires all affidavits containing privileged information to be stricken from the record. However, the court's holding was not as broad as Plaintiff claims. The court there excluded the affidavit because Section 3610 of the Fair Housing Act prohibits the use as evidence of anything said or done in the course of the Department of Housing and Urban Development's conference or conciliation efforts with the parties. *Id.*; 42 U.S.C.A. § 3610(d). Notably, the court excluded the affidavit pursuant to a federal law, as opposed to a state rule of professional conduct or state attorney-client privilege.

FED. R. EVID. 402.  That is an exclusive list of the sources of authority for mandatory exclusion of evidence in federal court.  *U.S. v. Scrushy*, 2004 WL 483264, at *5.  State rules of professional conduct are not included in the list.  *Id.*

That said, "[f]ederal courts agree that a district court has discretion in deciding whether to exclude evidence obtained in violation of ethical rules." *McIntosh v. Maricopa Cmty. Coll. Dist.*, 2009 WL 364021 at *5 (D. Ariz. February 12, 2009), *reconsideration granted on other grounds*, 2009 WL 1286197 (2009).  However, these courts have recognized that exclusion is a harsh sanction that should be rarely granted:

> An exclusionary policy frustrates truth and does not punish the ethical violation, but works against the client who may have been wronged by the opposing party as far as the substantive claim is concerned. An ethical violation ought to be dealt with by sanctions against the errant attorney, except in special cases.

*Weider Sports Equip. Co. v. Fitness First, Inc.*, 912 F. Supp. 502, 510 (D. Utah 1996). *See also Calloway v. DST Sys., Inc.*, 2000 WL 230244 at *3 (W.D. Mo. 2000) ("any sanctions would needlessly punish plaintiff for his attorney's misdeeds"); *Plan Comm. in the Driggs Reorganization Case v. Driggs*, 217 B.R. 67, 72 (D. Md. 1998) ("the appropriate remedy for any ethical violation that occurred would be disciplinary action against [the attorney], not . . . suppression of evidence. . . ."). Further, "[e]xclusionary remedies are strong medicine, normally reserved for constitutional violations . . . ." *U.S. v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989).

Here, in exercising its discretion, the Court will not strike Mr. Anderson's affidavit.  Clearly, the affidavit reveals relevant evidence relating to whether David was susceptible to being defrauded or unduly influenced when he was planning to transfer title of the farm to Defendant.  Moreover, it reveals evidence that may shed light on David's true intent.  In fact,

striking the affidavit would be inconsistent with the practice of Louisiana courts applying the laws under which Plaintiff seeks relief.[4] *See, e.g., In re Succession of Deshotel*, 10 So. 3d 873, 880 (La. App. 3 Cir. 2009) (allowing the attorney who prepared the decedent's will to testify as to the decedent's lucidity when the will was prepared)[5]; *In re Succession of Rachal*, 7 So. 3d 132, 133 (La. App. 3 Cir. 2009) (allowing attorney to testify–in response to Plaintiff's claims of undue influence, ingratitude, and fraud–that the testator had control of his faculties); *Petrie v. Michetti*, 59 So. 3d 430, 434 (La. App. 5 Cir. 430) (finding no ingratitude and permitting attorney who prepared the act of donation to testify that attorney and donor spoke on numerous occasions about transferring the property to defendant because defendant had taken care of donor for many years); *Andrus v. Fontenot*, 532 So. 2d 306, 310 (La. App. 3 Cir. 1988) (allowing the attorney who executed the donation to testify that donor appeared in good health and good capacity, and to testify as to conversations with donor).[6]

Putting all of that aside, even if the Court assumes that the attorney-client privilege does

---

[4] Plaintiff avers, *inter alia*, that Defendant obtained the property in question by undue influence, ingratitude, and fraud. [doc. # 1-1, p. 11]. Plaintiff also avers that David did not have the requisite mental capacity to transfer the land. *Id.*

[5] The mental capacity to make a donation is the same whether the donation was made *inter vivos* or *mortis causa*. LA. CIV. CODE ANN. art. 1477.

[6] The Court's conclusion is also consistent with the the rationale behind LA. CODE EVID. ANN. art. 506(C)(2). Rule 506(C)(2) states, "There is no privilege . . . as to a communication: which was with a client now deceased relevant to an issue between parties who claim through that client . . . . *Id.* A comment to the equivalent Restatement Rule states, "[t]he exception . . . is sometimes justified on the ground that the decedent would have wished full disclosure to facilitate carrying out the client's intentions. The witness will most often be the decedent's lawyer, who is in a position to know the client's intentions and whose testimony ordinarily will not be tainted by personal interest. Suppressing such testimony would hamper the fair resolution of questions of testator intent in will-contest and similar types of cases."

7

apply and was not waived, the Court nevertheless concludes that striking the affidavit is not warranted. In *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000), the court noted that while a "violation of the attorney-client privilege is a serious matter, our case law has recognized consistently that the privilege is in derogation of the search for the truth and, therefore, must be strictly confined." Similarly, in *U.S. v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997), the Fifth Circuit observed that the attorney-client "privilege is to be construed narrowly to apply only where its application would serve its purposes".

As noted above, evidence obtained in violation of neither the Constitution nor federal law is admissible in federal courts, even though obtained in violation of state law. With that in mind, "[i]t has not yet been decided whether the attorney-client privilege has a constitutional dimension such that evidence obtained by breaching the privilege must be excluded." *S.E.C. v. Forma*, 117 F.R.D. 516, 523 (S.D.N.Y. 1987); (*citing Hirschfeld v. S.E.C.*, 617 F. Supp. 262 (D.D.C. 1985). Hence, the attorney-client privilege does not mandate exclusion of the affidavit in question.

At any rate, Plaintiff has failed to cite any cases that excluded an attorney affidavit because it violated Rule 1.6 or the attorney-client privilege. In sum, and consonant with the Court's analysis above, the Court concludes that neither Rule 1.6 nor the attorney-client privilege work to exclude the affidavit in question.

II. New Evidence Presented Via Reply Brief

Plaintiff next moves to strike the Anderson affidavit because it constitutes new evidence presented via reply brief. [doc. # 15-1, p. 4]. Alternatively, in the event that the Court determines that the Anderson affidavit is admissible, Plaintiff requests a continuance of the hearing on Todd's motion to dismiss and leave of court to obtain Mr. Anderson's file and depose

Mr. Anderson. *Id.*

A court may consider new evidence introduced in a reply brief if the non-movant is given an adequate opportunity to respond. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004). Here, the Court will not strike the Anderson affidavit, but instead will allow Plaintiff to file a sur-reply to ensure that Plaintiff is allowed sufficient opportunity to respond to the affidavit. Defendant does not object to this relief.

### Order

Accordingly, it is **ORDERED** that Plaintiff's Motion to Strike [doc. # 15] is **DENIED**. It is also **ORDERED** that Plaintiff's unopposed alternative Motion for Continuance and Leave to Conduct Additional Discovery is **GRANTED**. Plaintiff shall have **thirty (30) days** to conduct additional jurisdictional discovery and to file a sur-reply.

Thus done and signed, this 25th day of October, 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE