UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**GEORGE E. McGOVERN, III**            **CIVIL ACTION. NO. 5:13-CV-1353**
**AS THE CURATOR OF DAVID**
**RICHARD MOORE**

**VERSUS**            **JUDGE STAGG**

**DAVID TODD MOORE**            **MAGISTRATE JUDGE HAYES**

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss for lack of personal jurisdiction, [doc. # 3], filed by Defendant David Todd Moore. For reasons stated below, it is recommended that the Motion be **DENIED**.

## Background

Plaintiff, in his capacity as Curator for David Richard Moore ("David"), filed a Petition to rescind a warranty deed executed by David in 2010, arguing: (1) the deed is invalid because David lacked capacity to sell or donate the land; (2) Defendant obtained the land by fraud, undue influence, and ingratitude; and (3) the deed should be rescinded for lesion beyond moiety as the sale price was less than one half of the fair market value of the land. [doc. # 1-1]. The deed transferred an Iowa farm to David's son, Todd Moore ("Defendant"). [doc. # 11-7]. Defendant is a citizen and resident of the state of Iowa. [doc. # 11-1, p. 7]. Since 1963, Defendant has resided without interruption in Iowa. *Id.* at 9. David, in contrast, is a resident of Bossier City, Louisiana. [doc. # 3-1, p. 1].

Around 2004 or 2005, David contracted early-onset dementia or Alzheimer's disease. [doc. # 1-1, p. 4]. Since at least the spring of 2008, Defendant was aware that David suffered from Alzheimer's disease. [doc. # 11-1, p. 16]. Around 2009, to effectuate the transfer of the

Iowa farm, David contacted Pugh, a Louisiana attorney, who consulted Anderson, an Iowa attorney. [doc. # 17-1, p. 16].  Pugh and Anderson exchanged letters in 2009 and 2010 in which they discussed how best to transfer title of the farm to Defendant.  *Id.* at 16-22.

Ultimately, title of the farm was transferred to Defendant by warranty deed on December 21, 2010.  [doc. # 11-7, p. 2].  In July of 2011, members of David's family instituted interdiction proceedings against David and Plaintiff was appointed David's curator.  *In re Interdiction of David Richard Moore*, No. 136,565, 26th Judicial District Court, Bossier Parish, Louisiana.  The Petition of Intervention was filed because, according to the Petitioners, David was "unable to make reasoned decisions regarding the care of his person and his property."  [doc. # 11-2, p. 4].  Defendant intervened in the interdiction proceeding about nine months after it was filed.  [doc. # 11-4].

After the instant Petition was filed, Defendant filed a motion to dismiss, asserting that this Court lacks personal jurisdiction over him.  [doc. # 3].  In response, Plaintiff alleges that the Court has both specific and general personal jurisdiction.  [doc. # 11, p. 5].  With regard to specific jurisdiction, Plaintiff alleges that: (1) Defendant consented to jurisdiction by purposefully availing himself of the benefits, privileges, and protections of Louisiana by intervening in David's interdiction proceeding; (2) Defendant transacted business in Louisiana; and (3) Defendant committed a tort within the state.  *Id.* at 2.  Plaintiff alleges that general personal jurisdiction is present because Defendant "agreed to act as David's agent to make medical decisions on David's behalf in Louisiana."  *Id.* at 20.

Briefing is complete; the matter is now before the Court.

**Law and Analysis**

2

Courts are obliged to consider personal jurisdiction before reaching the merits of a claim. *See*, *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623 (5th Cir. 1999) (citing *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)). A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant as long as (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state does not transgress due process protections under the United States Constitution. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Louisiana's long-arm statute extends jurisdiction to the full limits of the Constitution. LA. REV. STAT. ANN. § 13:3201(B). Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over the non-resident defendant comports with federal due process.

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

The "minimum contacts" prong divides contacts into those that give rise to general jurisdiction and those that give rise to specific jurisdiction. *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). General jurisdiction may be exercised when a defendant's contacts with the forum state are "continuous and systematic," regardless of whether the action is related to the forum contacts. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Specific jurisdiction applies where the non-resident defendant has relatively few contacts with the forum state, but the suit arises out of or is related to the defendant's

contacts with the forum. *Id*. "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants [sic] contacts with the forum state." *Freudensprung, supra*.

Finally, when a court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, a plaintiff need only make a *prima facie* showing of the jurisdictional facts. *Freudensprung, supra*. All uncontroverted allegations in the complaint are taken as true and factual conflicts are resolved in the plaintiff's favor. *Lewis v. Fresne*, 252 F.3d 352, 356 (5th Cir. 2001). However, a court is not required to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). "In considering a motion to dismiss for lack of personal jurisdiction a district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

I. Contacts Sufficient To Establish Specific Jurisdiction

Here, Plaintiff, *inter alia*, contends that personal jurisdiction exists because Defendant committed a tort in Louisiana. [doc. # 11, p. 19]. Plaintiff argues that Defendant's acts of defrauding and exercising undue influence over David constitute the minimum contacts necessary to establish jurisdiction. *Id.* at 20.

"When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the

causes of actions arising from its offenses or quasi-offenses." *Guidry*, 188 F.3d at 628. The act done outside the state must give rise to consequences within the state that are seriously harmful and were either intended or highly likely to follow from the nonresident's conduct. *Id.*[1]

Defendant argues that Plaintiff's bald assertions of tortious conduct cannot support personal jurisdiction. [doc. # 17, p. 2]. Defendant avers that "[d]espite approximately thirteen assertions that [Defendant] attempted to 'rob,' 'defraud,' 'coerce,' 'entice,' and 'exert undue influence' over David Moore, plaintiff has failed to come forth with or elicit any proof that [Defendant] attempted or committed a wrongful act in Louisiana." *Id.*

Defendant presents his own affidavit as well as the affidavit of Attorney John B. Anderson in an attempt to controvert Plaintiff's allegations. [doc. #s 3-2, 17-1]. Defendant's affidavit states: "I have never committed any fraudulent or tortuous [sic] act or omission in the State of Louisiana. I have never committed any fraudulent or tortuous [sic] act or omission outside of Louisiana with intent or knowledge that my act(s) or omission(s) could, in any way, adversely affect a resident of Louisiana, including but not limited to David Richard Moore." [doc. # 3-2, p. 3]. Defendant argues that Plaintiff has not come forth with any evidence–other than the unverified allegations in Plaintiff's Petition–to controvert the statements in his affidavit.

However, the Court finds that the statements in Defendant's affidavit constitute only conclusory legal assertions that cannot serve to defeat jurisdiction. Conclusory legal allegations,

---

[1] Plaintiff does not specify whether Defendant's alleged tortious acts of fraud and undue influence took place in Louisiana, outside of Louisiana, or both. In light of the fact that Defendant was not present in Louisiana when David transferred the Iowa farm to him, [doc. # 3-2, p. 38], and that it is not necessary that the acts of undue influence be done at the time of an *inter vivos* transfer, *see* LA. CIV. CODE ANN. art 1479 cmt. (d), the Court presumes that at least some of the acts necessary to consummate the alleged torts were committed outside of Louisiana.

although presented in the form of factual declarations, "do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999); *cf. Benton–Volvo–Metairie, Inc. v. Volvo S.w., Inc.*, 479 F.2d 135, 139 (5th Cir. 1973) (recognizing rule in summary judgment context that "affidavits containing mere conclusions have no probative value"). Thus, Defendant's conclusory legal assertions do not shift the burden of producing contradictory evidence to Plaintiff.

Even if Defendant's sworn statements did shift the burden to Plaintiff, the Court notes that Plaintiff has indeed presented contradictory evidence. Plaintiff attached three sworn statements from Janice Moore, Bryan Moore, and Ashley Moore Atkins to his Memorandum in Opposition to Defendant's Motion to Dismiss that all controvert Defendant's statements. [doc. # 11-3, p. 6-8]. For instance, Ashley Moore Atkins states that David "is at risk of being taken advantage of by Diane Tanner and [Defendant], who have already conned Defendant into signing documents he does not understand and into putting himself at financial risk . . . ." Thus, because conflicts between the parties' affidavits must be resolved in Plaintiff's favor, Defendant's affidavit does not prevent this Court from treating Plaintiff's allegations of fraud and undue influence as true for purposes of this motion.

Undeterred, Defendant also presents the affidavit of Attorney Anderson. [doc. # 17-1]. In 2009, David's attorney, Pugh, contacted Attorney Anderson to help facilitate the Iowa farm transfer to Defendant. *Id.* at 1. Anderson eventually prepared the warranty deed that transferred the farm. [doc. # 11-7]. Anderson's sworn statement, *inter alia*, states: (1) Correspondence with Attorney Pugh indicated that David wanted to transfer the farmland to Defendant; (2) On September 14, 2010, David called and told me to prepare a trust for the farm land; (3) "In my

dealings with David R. Moore, including a telephone conversation in 2010, I observed that he acted and conversed rationally and was cognizant of his decision to have the farm passed to [Defendant]"; and (4) David felt that Defendant could be relied upon to carry out David's wish of enabling John Moore, David's brother, to reside on the farm during John's lifetime. [doc. # 15-2, p. 1-2]. Defendant, essentially, argues that Anderson's affidavit clearly controverts Plaintiff's allegations of fraud and undue influence. [doc. # 17, p. 3].

In response, Plaintiff presents Attorney Anderson's deposition. [doc. # 27-2]. In his deposition, Anderson stated that he was never aware that David had been diagnosed with Alzheimer's disease or early onset dementia. *Id.* at 7. Anderson also stated that he would have wanted to know about David's mental capacity before having David execute the warranty deed. *Id.* Plaintiff argues that "great doubt should be cast on Mr. Anderson's unequivocal testimony regarding David Moore's intentions." [doc. # 27, p. 3].

Plaintiff's arguments are well-taken. While Anderson's affidavit certainly reveals what Anderson thought David's intentions were, it does not reveal what David's true intentions were as Anderson was not aware that David was suffering from a mental impairment and was susceptible to influence. More importantly, as Plaintiff mentions, even if the affidavit shows David's true intent, that showing would not controvert Plaintiff's allegations of fraud and undue influence because David's intent is not dispositive. For instance, a donation *inter vivos* is only declared null due to undue influence "upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the

7

donee or other person for the volition of the donor." LA. CIV. CODE ANN. art. 1479.[2] In other words, the question is not what David's intent was at the time of the transfer, but whether his intent was the product of undue influence. Consequently, while Anderson's affidavit is relevant to whether David was susceptible to being defrauded or unduly influenced, it does not—for purposes of making a *prima facie* showing—directly controvert Plaintiff's allegations of fraud and undue influence.

Finally, the Court disagrees with Defendant's contention that Plaintiff's fraud and undue influence claims are only conclusory and should not be taken as true. [*See* doc. # 3-1, p. 12]. Plaintiff's uncontroverted allegations, when juxtaposed with the claimed circumstances surrounding the transfer of the Iowa farm, are more than conclusory. For instance, the following allegations, when taken as true, provide circumstantial evidence to support Plaintiff's allegations: (1) that Defendant took David to the Social Security office so that David could deposit all of David's social security income into an account that David's wife, Janice, could not access; (2) that Defendant presented David with a draft will that bequeathed David's entire estate to Defendant to the exclusion of David's wife and other children; (3) that David suffered from dementia or Alzheimer's disease; (4) that Defendant was aware that David suffered from a mental disease; and (5) that Janice Moore, Bryan Moore, and Ashley Moore Atkins all swore that David was at risk of being taken advantage of by Defendant. [doc. #s 1-1, p. 9-10; 11-3, p. 6-8].

In sum, because Plaintiff's assertions of fraud and undue influence are more than conclusory and neither Defendant's affidavit nor Anderson's affidavit controvert those

---

[2] Despite the language in the deed reciting consideration, Defendant did not pay David anything for the farm. [doc. # 11-1, p. 34]. Thus, the Court proceeds from the standpoint that the farm transfer was a donation rather than a sale.

assertions, the Court must accept them as true. Moreover, Plaintiff has sufficiently alleged that Defendant's intentional tortious acts gave rise to the improper transfer and that the transfer was "seriously harmful" as it improperly divested David of a valuable asset. Thus, the Court finds that Plaintiff has made a *prima facie* showing that Defendant has sufficient minimum contacts with the state of Louisiana . . . a relatively low burden at this stage of the litigation.

II. <u>Traditional Notions of Fair Play And Substantial Justice</u>

Once it has been decided that a defendant purposefully established such minimum contacts within the forum state, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996). Defendants rarely meet this burden, however. *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 213 (5th Cir. 1999). To determine whether the exercise of jurisdiction is fair and reasonable, a court must balance

> (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies.

*Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003).

Defendant's memoranda do not address the foregoing considerations. To the extent that Defendant's omission is not dispositive *per se*, the Court observes that the factors above support the exercise of jurisdiction. First, the burden of requiring Defendant to defend in Louisiana is not great because Defendant has demonstrated his ability to litigate here before when he intervened in David's interdiction proceedings, and Defendant has come to Louisiana to see his father on more than one occasion. [doc. #s11-4 and 3-1, p. 6]. Second, Louisiana has a strong interest in

9

protecting its citizens from tortious actions. Third, David has great interest in obtaining relief as he has allegedly been deprived of valuable farm land. Fourth, the factor of interstate judicial economy is not relevant since there is no outstanding litigation regarding this case in another forum. Finally, all states enjoy a shared interest in ensuring that parties injured by the tortious conduct of out-of-state actors are not themselves forced to cross state lines to obtain redress. *See Wien Air Alaska, Inc., supra.; Lewis supra* (forum state had significant and dispositive interest in the matter because the injured party was a resident of the forum state). At bottom, Defendant has not presented a compelling case showing that jurisdiction is unfair or unreasonable.[3]

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the Motion to Dismiss for lack of personal jurisdiction, [doc. # 3] filed by Defendant David Todd Moore be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[3] As Plaintiff has sufficiently demonstrated a *prima facie* case of specific jurisdiction and Defendant, in turn, has not compellingly shown that jurisdiction is unreasonable, the Court need not consider Plaintiff's alternative arguments in favor of personal jurisdiction.

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE**.

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 16th day of December, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE